Matthew Hoppeck, on behalf of Tatsral Bekhbat and her spouse, this is an immigration appeal that involves a somewhat novel issue, both of where the court's jurisdiction lies in a denial of a motion to reconsider and where the board immigration appeals jurisdiction lies in deciding issues of administrative closure and recalendering. We've argued in our briefing that this court has jurisdiction because either there's a removal order to review or the board thinks there's a removal order to review, and even if it's not a removal order, the board thinks it is, that's enough for the petitioners to be in peril because the government will eventually enforce the removal order and deport them. Can I ask you a question about that? So when I read the BIA order, and the order is plural, it's not a model of clarity. It talks about removal proceedings. It doesn't talk about a removal order. And I wonder if there's a difference there, and I know it was confusing, but I wonder if really what they were doing was just re-initiating proceedings. Yeah, if they were re-initiating proceedings, so the removal proceedings, the statute refers to 8 U.S.C. 1229A, is the process, the process from start when they issue a charging document to when the judge issues a decision, if they were re-initiating proceedings, we'd go back to immigration court and have our preliminary hearings set for trial, have an asylum trial. I agree that the board's decision is not a model of clarity, but what is missing from the 2022 order and the 2021 order is any removal order. Well, and I, you know, the other way to read it, and I read it very carefully, it talked about removal proceedings over and over again. I wonder whether it's just basically you have a pause in the middle, and then they talk about the removal proceedings, and then the voluntary departure just re-initiates because that was the last order that was given. Again, not the model of clarity. We have to decide whether there was an error here, but that's how I read the order. So if the board, if the board were on its A game that day and it had actually reissued the decision that it now says it planned to, the board uses the word reinstate instead of re-calendar, and those two words, I think, mean the same thing, but the board doesn't. But as to your question, re-calendaring the case just means you're back on the docket. Reinstating something is like reissuing an order, the order of finally closing a case. So let's say the board was on its A game and it wanted to reinstate that prior order, reissue or re-calendar. That prior order, the 2003 removal order, affirmed the immigration judge's decision. It was a removal order. The court's case in Kamek describes when the board affirms an underlying order, that order becomes final. That's how the regulations are worded, as the Supreme Court said in Nasrallah. If we had that, then in 2021, the petitioners would have fair notice. You guys have been ordered to voluntarily depart. You'd have a voluntary departure period. If you don't obey the voluntary departure period, it becomes a removal order. And also the order would need to state, the regulations require that the order state that if you move to reconsider, your voluntary departure goes away. But utterly missing from this board's order is any warning that this is a voluntary departure order, what the voluntary departure period is, and the warning that the regulations require that if you move to reconsider, you'll vacate your own voluntary departure order. What's cute about the board's final decision in the footnote is they say, well, we really meant to reinstate voluntary departure. And since that was our intention, you moving to reconsider has vacated that nonexistent voluntary departure order. And that's why I was pushing you on this, because I think that that may have been what they meant to do, and they assumed that you knew that. And then when you went and asked for reconsideration, of course, that was one of the conditions of voluntary departure. So there was definitely a failure to communicate at some point between the parties, I think. The problem and the reason they sought reconsideration is they couldn't have sought review in this court because it wasn't a final order. What the board reissued was an order administratively closing the case. The other question is, how are the petitioners to know which is the clerical error? The board's 2021 decision says we're going to reissue our 2003 decision, 2013 decision, but then they actually reissue the 2004 decision, 2014 decision. Was the board's reference to the previous order the clerical error, or was the reissued decision with the stamp, was that the clerical error? Petitioners don't know, and the vehicle to challenge that is to say, hey, board, reconsider. Just tell us. Clarify what it is we're expected to do. We want to comply with the law. If we have to leave, we want to leave legally. And we don't want these criminal and civil penalties for having a removal order that we don't even know if it's a removal order, but we could be jailed, fined, not be allowed to back into the United States for 10 years. The vehicle was a motion to reconsider. They couldn't petition this court to review it because the court can only review removal orders. So they did all they could do. The attorney general takes the position that because they moved to reconsider, that vacates the voluntary departure order that the board hadn't even issued, and that all this court can review is whether the board exercised its discretion properly in reconsidering. I think this case is much larger than that. And so as an initial matter, I think the court has jurisdiction to say either this was not a removal order, dismiss the appeal, and clarify that they have not been ordered removed. Then I don't know what happens. Perhaps we do reinitiate removal proceedings because you have these people in the United States kind of in limbo. Or to say this was a removal order, but it was done improperly. It violated the right to due process. It violated the statute and the agency's regulations. So do over, remand, and send it back to the agency to apply the law. If the court concludes that it has jurisdiction, at least on either of those options, then we get to the merits, where the board says that it, as the adjudicatory body, doesn't have jurisdiction to decide whether to administratively close cases or recalendar cases, that the prosecutor, the DHS in this case, is in charge of telling the board which cases it has to go forward on, which cases it can delay going forward on. The problem for the board's position is that hasn't been the law for over a decade. In 1996, the board had issued a decision saying that the prosecutor could veto requests for administrative closure. But in 2012, the board issued its decision in matter of abatician, saying that that's not fair, that the board or the immigration judge has to be neutral, and so they should evaluate their requests based on its merits. So which board decision is it that's in front of us right now, that's been raised by you as subject to our jurisdiction to review? We know for certain the 2022 decision is before the court. To me, the open question is whether the 2021 decision is before the court as well. On the merits, this Court's decision in Issanois . . . Which dates? Yeah, I'm sorry. Give dates on those decisions, on which decision. Yeah, I just know that it's cited in page . . . Is it June 17, 2022? I'm talking about the court's precedent in the case Issanois, where the court said when it's reviewing a denied motion to reconsider, it necessarily has to review the merits of the underlying decision. That would be sort of on the substance. But to get more directly to your question, whether the 2021 order is on review before the court kind of depends on whether you take the board's final decision as reaffirming its underlying decision. In which case, in theory, I think both are before the court. But technically speaking, I think only the motion for . . . I don't know. I don't have the dates in front of me. The motion for reconsideration is before us. To get at that other decision, I think you have to get at it through the motion for reconsideration, don't you? I think so. And, you know, I don't think the petitioners did anything wrong or their counsel did anything wrong because they couldn't have petitioned this court to review. And really, you think about what options these folks have. Nasrallah says they can't file a habeas petition. They can't file a district court action. All they can do is petition the federal court for review under 1252. And this court can only review final orders of removal. So this didn't become a final order of removal, really, until the 2022 decision. Our view then is that they're sort of part and parcel. You can't review them separately because the 2022 decision is saying, oh, wait, our 2021 decision meant something else that's not written in the decision. I had a question about administrative disclosure and the prosecutorial discretion argument. I read that case that talks about no one has a veto power over closing it, the administrative closure. What I didn't read that case to say was that both parties sort of have to agree to reopen it. That I think what the board's position is, is that either party can reopen the proceedings and put it back on the court's docket. So I just wanted to address that because I think the latter happened here and not the former. I'd like to address that. So there are two board decisions. Abitisian was about administrative closure and there's no veto power over administrative closure. Matter of WYU came two years later where they said the same rule applies to recalendering. They said we're going to use the same standard. And one of the main factors, they said, the judge has to consider in whether to recalendar is whether the movement has given a persuasive reason. That's the, in quotes, persuasive reason. Matter of WYU says that's the main factor. The board's decision here says the movement doesn't have to give any reason because they're the DHS and they have, in quotes, exclusive jurisdiction over administrative closure. When administrative bodies throw this word around, jurisdiction as well as courts, I think we should be really careful about what that means. Congress gave the board jurisdiction to decide motions to reconsider, motions to reopen. It's in the statute as well as in the agency's regulations. For this agency to say this other agency, the prosecutor in this case, is actually in charge of which cases we can reopen or recalendar, I think has really serious statutory implications just from a jurisdictional problem and it's also a due process problem. Because let's say there were two different rules, one for reopening or recalendering and one for administrative closure. If either side can just file a motion saying, hey, court, you're required to put this case back on your docket, the other side is going to cry foul. This is, we don't get a say? The court doesn't have to make a neutral judgment? That's what the matter of WYU is going to. There are two court of appeals cases that have read this in due process terms. There's the Melnitsenko Second Circuit case and the Ahmed v. Mukasey case in the Ninth Circuit. I do think giving either party a veto power, either with administrative closure or recalendering, presents a situation where one party isn't getting a fair shake and that's, I think, what the due process clause requires. I'll reserve the rest of my time. Thank you. Thank you, Mr. Hoppe. Mr. Fiorino? Good morning. I may please the court, Paul Fiorino for the Attorney General. This case is a lot simpler and more straightforward than Petitioner's Counsel led on. Judge Smith, the only decision before the court today is the June 17, 2022 decision by the board denying reconsideration. The issue before the court is whether the board abused its discretion in denying reconsideration. And what the board looks at in making that determination is whether the petitioner raised a legitimate error of fact or law in the prior decision, the prior decision being, I think, July 29, 2021. If the petitioner hasn't raised a legitimate factual or legal issue in that July 29, 2021 decision, the board denies reconsideration as it did here. And the board did not abuse its discretion because petitioners raised no legitimate issue of fact or law in their motion for reconsideration. With regard to the court's jurisdiction, it's not an issue at all in this case. There is jurisdiction because the petitioner filed his petition for review timely within 30 days of the board's June 22, 2022 decision. When the court reissued its decision in 2021, it reissued its prior decision as of that date. You read carefully what the board did. So at that point, the petitioner could have, if he had wanted to, filed a petition for review of the merits of that 2013 case. They didn't do that and said they filed a motion to reconsider with the board. Therefore, all of the merits of the case, the underlying asylum claim, are not before the court, nor is the board's 2021 decision before the court because the petitioner didn't file a petition for review. So all we're left with is the single board decision of 2022 where it denied reconsideration. Counsel, what did the 2021 order do? I mean, I realize you're saying we don't get to review it, but I just don't know exactly what it did. It reinstated removal proceedings. I know that Your Honor has a question about that. Removal proceedings really, it's a term of art. It's not a recalendering, as Petitioner's Counsel said. There's no recalendering here. The case is done. It's reinstituting proceedings and putting, starting the clock back from 2013. In 2013, where were we then? Board had issued a final removal order. And actually back in 2013, the petitioner filed a petition for review that was subsequently removed under prosecutorial discretion. So that's where we were. And if you look at the board's decision, it's unmistakably clear what it did in 2021. It says, we're reissuing our 2013 decision. Now, yes, they happened to append the incorrect decision when they issued that reissued decision. But there's no question in anybody's mind what they were actually doing. Really quickly, was voluntary departure reinstituted then as well? Had they taken advantage of that? No, because if you look at the 2013 order, the 2013 order says if you move for reconsideration, you're going to... No, I understand that. But prior to the movement, moving for reconsideration, would they have had a 90-day period to voluntarily depart, which was in the 2013 order? If the time hadn't run out, they could have, but they didn't. Okay. And just to be clear, that was following the 2021 order. Correct. They could have voluntarily departed within 90 days. Correct. If they had any time left, but they didn't. Okay. So there's no question what the board was doing in 2021. You go back and look at the 2013 order, that's where we were in July of 2021. Just, you know, cross out the date and put July 2021 instead of 2013. That's where... And then you look at the warning order, and the warning says if you move for reconsideration, there's no gotcha here. There's no surprise. And what warning order? When was that issued? Well, that was initially issued in the 2013 order, but by virtue of the court's reissuance of its prior decision, it was in effect in 2021. The order was only printed, so to speak, in the 2013 order. Right. Okay. But, you know, as I say, for all intents and legal purposes, it was extant in 2021. Okay. So there's no gotcha here. There's no surprise or anything like that. Oh, and with respect to due process, I'd remind the court that due process requires a fundamental liberty or property interest. And what we're talking about here is reconsideration and ultimately prosecutorial discretion. Prosecutorial discretion is entirely subjective. It's entirely discretionary, and there's no liberty interest in discretionary relief. Another distinction I want to make, which is very important, and I've seen that our brief and the petitioner's brief as well, confusing administrative closure and prosecutorial discretion. It is true that nobody has veto power over administrative closure because administrative closure is a broader remedy than prosecutorial discretion. Administrative closure halts the proceedings for any number of reasons. It could be awaiting an imminent visa approval or something like that, or it could be, as in this case, prosecutorial discretion. But it is legally true, and there's no dispute about this, that only the Department of Homeland Security has exclusive jurisdiction and exclusive discretion to grant prosecutorial discretion. Don't mix up the two. Okay? Prosecutorial discretion is sort of like a subset of administrative closure. When we get to administrative closure, yes, we are under the guise of matter of abetezian, and there are factors to consider. And if you take a look at the Board's 2021 decision, you'll see that the Board did in fact consider those. It considered first the fact that DHS wanted to, under its discretion, wanted to reinstate proceedings. It considered that. And it also considered the fact that there was then no application for relief or anything. The application for relief, the voluntary departure, and the thing about the son, that wasn't raised until the motion to reconsider. Okay? And that ship had sailed at that point. So when we look back at the Board's 2021 decision, did it apply matter of abetezian? Absolutely. Did it abuse its discretion? Not at all. So when I get up here and I say that this case is a lot simpler than it seems, I'd ask the question before the Court, what's the standard of review and what was the Board looking at? And when you take a look at all of that, you'll see that the Board did not abuse its discretion in denying reconsideration. We asked the Court to affirm the Board's decision to deny the petition for review. Any questions? I don't see any. Thank you. Thank you, Mr. Fiorino. Mr. Hoppeck? Thank you, Your Honor. My colleague says that the Board's order in 2021, there's no clarity about what they were planning to do. But consider another factor we haven't talked about yet. It said it was granting the motion that the DHS had filed. But that motion asks that the Board order the petitioners removed, not grant the voluntary departure. So there's even this question of, okay, you say you're granting the motion. What are you doing? The Board's decision doesn't say whether they're ordering removal or voluntary departure. And now the Department of Justice on appeal, sort of in this post hoc rationalization, I think wants the Board's decision to seem clear, but it's not clear. In their, both in their opposing the motion and in their motion to reconsider, the petitioners argued, hey, the DHS is asking that we be ordered removed. We should at least get to know if we're being ordered removed or if we're getting voluntary departure. And the agency's, I think the right thing for the agency to do would have been to answer the motion to reconsider in 2022 and just say, you have been ordered removed or you are being granted voluntary departure. But given that the DHS was moving for Why would there be an impression that voluntary departure was still on the table? How is what? I'm sorry? Why would the appellants be under the impression that voluntary, the petitioners, voluntary departure was still an available outcome? Well, Mr. Fiorino just argued that they could have left within 60 or 90 days. It's the Department of Justice's view, not in the brief, but as I understood him this morning, that they did have voluntary departure after the 2021 order. Our argument back is nobody told them that. The order that was supposed to give them that wasn't reissued, wasn't attached to the decision. Mr. Fiorino also argued that they lost their chance of voluntary departure when they filed their petition for review in this court. But that's just not true. This court remanded the case to the board, putting voluntary departure back on the table if it were pursued. And if the board intended to issue a voluntary departure order or not issue one in 2021, it didn't say either way. However, there's a clue in the 2022 decision in the footnote. What was the effect of the motion to reconsider on voluntary departure? Well, that's what the board says. In their footnote, they say, because we planned to give you voluntary departure and now you've moved to reconsider, you've vacated your voluntary departure order under 1240.26. For that regulation to apply, you have to have told them they're getting voluntary departure. You have to have told them the voluntary departure period and warned them of the consequence of filing a motion to reconsider. Just to be clear, is the voluntary departure in the 2013 order? It is. Yeah. And that was the order that they petitioned this court to review. Then the parties jointly agreed to remand the case. The court granted their motion on that settlement agreement so that the case would be administratively closed. And it sat there for a decade until the DHS prosecutor in this case decided, hey, board, you're required to reopen. I want to say one more thing about that. The distinction between prosecutorial discretion and administrative closure, it's true that the DHS has the exclusive authority to decide which cases to commence. That's the word that Battisian uses. They don't have exclusive authority to tell the Department of Justice which cases to go forward on once the case has commenced. The board here, twice now, has said that the DHS has exclusive jurisdiction over which cases to recalendar. And its own precedents, the main case is a matter of WIU, and this Court's case in Gonzales-Vega, which said that's an appliable standard, just say that's just absolutely not true. What we would ask the Court to do is to remand this case to the board to clarify whether the petitioner has been ordered removed, voluntarily depart, or whether the case is being reopened or reinstated. Thank you. Thank you. Thank you. Also, Mr. Fiorino, and the Court appreciates both counsels' presence and participation in their argument today.